---

NO. 13-1176

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT**

UNITED STATES OF AMERICA,
Appellee,

vs.

DENNYS RODRIGUEZ,
Appellant.

---

AN APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

HONORABLE JOSEPH F. BATAILLON, JUDGE,
UNITED STATES DISTRICT COURT

---

# BRIEF OF APPELLANT

---

**DENNYS RODRIGUEZ, Appellant,**

**SHANNON P. O'CONNOR**
**First Assistant Federal Public Defender**
**District of Nebraska**
222 South 15th Street
Suite 300 North
Omaha, NE
(402) 221-7896

## <u>SUMMARY AND REQUEST FOR ORAL ARGUMENT</u>

Dennys Rodriguez was indicted for possession with intent to distribute 50 grams or more methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1).  The charges arose after a traffic stop on Highway 275 in Valley, Nebraska.  At the conclusion of the traffic stop, a drug dog was deployed.  After the canine alerted, officers searched Rodriguez's vehicle and discovered a large bag of methamphetamine.  Rodriguez filed a motion to suppress evidence in the district court, arguing that (1) the officer did not have probable cause to initiate the traffic stop, and (2) the traffic stop was unreasonably prolonged without his consent.  The district court denied the motion, holding that the evidence obtained from the stop was admissible against Rodriguez.

Rodriguez entered a conditional plea of guilty to the indictment and now appeals the district court's denial of his motion to suppress.  Rodriguez believes that a ten-minute oral argument will assist the Court in evaluating the circumstances which led to the unlawful traffic stop and arrest.

# **Table of Contents**

SUMMARY AND REQUEST FOR ORAL ARGUMENT. . . . . . . . . . . . . . . . . .  i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

STATEMENT OF THE FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

      I.     MORGAN STRUBLE VIOLATED RODRIGUEZ'S FOURTH AMENDMENT RIGHTS WHEN, AFTER THE CONCLUSION OF A TRAFFIC STOP AND WITHOUT REASONABLE SUSPICION OF CRIMINAL ACTIVITY, HE DETAINED RODRIGUEZ FOR EIGHT MINUTES TO WAIT FOR A BACK-UP OFFICER AND DEPLOY A DRUG DOG TO SNIFF RODRIGUEZ'S VEHICLE. . . . . . . . . . . .  9

      II.    THERE WAS INSUFFICIENT FACTS TO ESTABLISH REASONABLE SUSPICION THAT THE DEFENDANT WAS INVOLVED IN CRIMINAL ACTIVITY. . . . . . . . . . . . . . . . . . . . . .  16

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

Appellate Case: 13-1176    Page: 3    Date Filed: 05/21/2013 Entry ID: 4037780

ADDENDUM

Judgment in a Criminal Case entered January 4, 2013.. . . . . . . . . . . . . . . . . 1

Memorandum and Order Denying Motion to Suppress,
    August 30, 2012. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States Magistrate Judge's Findings from the Bench
    July 10, 2012.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Findings and Recommendation and Order, July 10, 2012. . . . . . . . . . . . . 23

Appellate Case: 13-1176   Page: 4   Date Filed: 05/21/2013 Entry ID: 4037780

# Table of Authorities

## Cases

Reid v. Georgia, 448 U.S. 438 (1980).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 17

State v. Magallanes, 284 Neb. 871, 824 N.W.2d 696 (Neb. 2012). . . . . . . . . . . . 4

Terry v. Ohio, 392 U.S. 1 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11, 19, 20

United States v. $ 404,905.00 in U.S. Currency, 182 F.3d 643
    (8th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10-12, 15

United States v. Adams, 485 Fed. Appx. 845 (8th Cir. 2012)(unpublished).. . . . . 12

United States v. Alexander, 448 F.3d 1014 (8th Cir. 2006). . . . . . . . . . . . . . . 2, 12

United States v. Carrate, 122 F.3d 666 (8th Cir. 1997). . . . . . . . . . . . . . . . 2, 17, 20

United States v. Claude X, 648 F.3d 599 (8th Cir. 2011). . . . . . . . . . . . . . . . . . . . 2

United States v. Flores, 464 F.3d 1100 (8th Cir. 2007). . . . . . . . . . . . . . . . . . . . . 9

United States v. Jones, 269 F.3d 919 (8th Cir. 2001). . . . . . . . . . . . . . . . . . . . 2, 18

United States v. Mallard, 334 F.3d 765 (8th Cir. 2003).. . . . . . . . . . . . . . . . . . . . . 9

United States v. Martin, 411 F.3d 998 (8th Cir. 2005). . . . . . . . . . . . . . . . . . . . . 12

United States v. Mohamed, 600 F.3d 1000 (8th Cir. 2010). . . . . . . . . . . . . 12, 15, 16

United States v. Morgan, 270 F.3d 625 (8th. Cir. 2001). . . . . . . 8, 12, 14, 15, 20, 21

United States v. Munoz, 590 F.3d 916 (8th Cir. 2010). . . . . . . . . . . . . . . . . . . . . 12

United States v. Rivera, 570 F.3d 1009 (8th Cir. 2009).. . . . . . . . . . . . . . . . . . . . 12

Appellate Case: 13-1176    Page: 5    Date Filed: 05/21/2013 Entry ID: 4037780

United States v. Robinson, 455 F.3d 832 (8th Cir. 2006). . . . . . . . . . . . . . . . . . . . 12

United States v. Suitt, 569 F.3d 867 (8th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . 12

Wong Sun v. United States, 83 S. Ct. 407 (1963).. . . . . . . . . . . . . . . . . . . . . . . . . 16

**Statutes**

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. § 841(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i, 1, 3

21 U.S.C. § 841(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i, 1, 3

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Constitutional Provisions**

U.S. CONST. amend. IV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 7-10, 16, 17

Appellate Case: 13-1176    Page: 6    Date Filed: 05/21/2013 Entry ID: 4037780

## JURISDICTIONAL STATEMENT

Dennys Rodriguez appeals from the judgment and sentence imposed by the Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska, following his conditional plea of guilty to the indictment. The case number below is 8:12CR170.

Federal jurisdiction over the subject matter of this case is proper pursuant to 18 U.S.C. § 3231 and 21 U.S.C. §§ 841(a)(1) and (b)(1).

The United States Court of Appeals for the Eighth Circuit has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which provides for jurisdiction over a final order subject to appeal.

The judgment and sentence were entered on January 4, 2013. Rodriguez filed a timely notice of appeal on January 17, 2013.

1

## STATEMENT OF THE ISSUES

I.    WHETHER MORGAN STRUBLE VIOLATED RODRIGUEZ'S FOURTH AMENDMENT RIGHTS WHEN, AFTER THE CONCLUSION OF A TRAFFIC STOP AND WITHOUT REASONABLE SUSPICION OF CRIMINAL ACTIVITY, HE DETAINED RODRIGUEZ FOR EIGHT MINUTES TO WAIT FOR A BACK-UP OFFICER AND DEPLOY A DRUG DOG TO SNIFF RODRIGUEZ'S VEHICLE.

United States v. Claude X, 648 F.3d 599 (8th Cir. 2011)

United States v. Alexander, 448 F.3d 1014 (8th Cir. 2006)

United States v. $ 404,905.00 in U.S. Currency, 182 F.3d 643 (8th Cir. 1999)

II.    THERE WAS INSUFFICIENT FACTS TO ESTABLISH REASONABLE SUSPICION THAT THE DEFENDANT WAS INVOLVED IN CRIMINAL ACTIVITY.

United States v. Carrate, 122 F.3d 666 (8th Cir. 1997)

Reid v. Georgia, 448 U.S. 438 (1980)

United States v. Jones, 269 F.3d 919 (8th Cir. 2001)

Terry v. Ohio, 392 U.S. 1 (1968)

2

## STATEMENT OF THE CASE

Dennys Rodriguez was indicted on May 22, 2012 for possession with intent to distribute 50 grams or more methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1).  The charges were brought after an officer stopped Rodriguez for a traffic violation and discovered a large bag of methamphetamine in Rodriguez's vehicle.  Following his indictment, Rodriguez moved to suppress the evidence obtained from the stop.  Rodriguez argued that the stop was not supported by probable cause that he had committed a traffic violation and that the stop was unreasonably prolonged without his consent.

United States Magistrate F.A. Gossett recommended that Rodriguez's motion be denied.  The district court adopted the recommendation in its entirety, finding that Rodriguez's Fourth Amendment rights were not violated during the course of the traffic stop.  Rodriguez entered a conditional plea of guilty to the Indictment on September 28, 2012, reserving his right to appeal the suppression issues.  On January 4, 2013, Rodriguez was sentenced to 60 months imprisonment.  Rodriguez now renews his constitutional challenge to his unlawful detention.

Appellate Case: 13-1176    Page: 9    Date Filed: 05/21/2013 Entry ID: 4037780

## STATEMENT OF THE FACTS

At approximately 12:06 a.m. on March 27, 2012, Officer Morgan Struble of the Valley Police Department was traveling westbound on Highway 275 near the Meigs Street intersection. (Supp. Tr. 3-4)[1] Struble had been a law enforcement officer for almost two years. (Supp. Tr. 31) Struble had his certified canine with him. Struble initiated a traffic stop of a Mercury Mountaineer after he observed the vehicle's passenger side tires momentarily cross the fog line and then briefly drift off the roadway. (Supp. Tr. 4-5) (Supp. Tr. 5; 28; 30-31) Struble testified that he believed this behavior constituted driving on the shoulder of the road which is a traffic violation[2]. (Supp. Tr. 54-56) Upon stopping the vehicle, Struble contacted the occupants. (Supp. Tr. 6) The Defendant, Dennys Rodriguez, was driving the vehicle, and his passenger was Scott Pollman. (Id.) According to Struble, his first observation was the overwhelming, but pleasant, odor of air freshener coming from

_____

[1] "Supp. Tr." refers to the transcript of the July 10, 2012, hearing on Rodriguez's motion to suppress evidence.

[2] The Defendant initially raised the issue that the law enforcement officer did not have probable cause to stop his vehicle because crossing the fog line was not a violation of Nebraska law. After the District Court denied that motion, the Nebraska Supreme Court ruled in State v. Magallanes, 284 Neb. 871, 824 N.W.2d 696 (Neb. 2012) that crossing the fog line constituted driving on the shoulder of the road which is a violation of Nebraska law. The federal courts are bound by the state's interpretation of their statutes. Based on that ruling, Rodriguez is not challenging that issue in this appeal.

4

the vehicle. (Supp. Tr. 6; 32-31) Struble also testified that Pollman seemed nervous. He wore his cap low over his eyes, was smoking a cigarette and looked straight ahead, making no eye contact with Struble. (Supp. Tr. 7) There is no evidence in the record that Rodriguez showed signs of nervousness. Rodriguez appeared agitated when he was told that crossing the white line was a violation of driving on the shoulder of the road. (Supp. Tr. 31-32)

Struble asked Rodriguez if there was a reason that he drove onto the shoulder, and Rodriguez replied that there was a large pothole in the roadway. (Supp. Tr. 8; 29) Struble obtained Rodriguez's paperwork and then asked him to sit in the cruiser while he conducted a records check. (Supp. Tr. 8-9) Rodriguez exited his vehicle and asked Struble whether he was obligated to sit in the cruiser. (Supp. Tr. 9) When Struble advised him that he was not obligated to sit in the cruiser, Rodriguez indicated that he would rather sit in his own vehicle. (Id.) Struble found this significant because in his law enforcement experience, he has "never had anybody not want to sit in my vehicle with me." (Supp. Tr. 9) Struble then returned to his cruiser to conduct the records check. (Id.)

Upon returning to the vehicle, Struble spoke with the passenger, Mr. Pollman. (Supp. Tr. 9-10). Struble initially asked Pollman for his identification, and then began questioning Pollman about the purpose of their trip. (Supp. Tr. 10). Pollman

5

explained that he and Rodriguez had traveled from Norfolk to Omaha to look at an older model Mustang for sale for $6,500. They did not buy the car because the seller did not have a title. (Id.; Supp. Tr. 40-41) In response to further questioning, Pollman indicated that he had not seen any pictures of the vehicle prior to making the trip to Omaha. (Supp. Tr. 11) Struble testified that he found this to be abnormal; something he would not do. (Id.; Supp. Tr. 41-42)

After obtaining Pollman's driver's license, Struble again returned to his cruiser. (Supp. Tr. 11). At approximately 12:19 a.m., while conducting a records check on Pollman, Struble requested a second officer, admitting that he already had plans to walk his dog around Rodriguez's vehicle but because there were two people involved, he needed backup for officer safety. (Supp. Tr. 12; 47; 50-51) He then began writing a warning ticket for Rodriguez. (Supp. Tr. 12)

After completing the warning ticket, Struble returned to the Mountaineer for a third time, returned all of the documents to Rodriguez and Pollman, and issued the written warning to Rodriguez. (Id.) Struble testified that the warning was completed at 12:25 a.m. and given to Rodriguez approximately a minute or two later. (Supp. Tr. 12-13) Struble spent another two to three minutes explaining the ticket to Rodriguez, until approximately 12:28 a.m. (Supp. Tr. 14) Consistent with his training, Struble returned Rodriguez's documents and then immediately asked Rodriguez whether he

6

had an objection to his drug dog walking around his truck. (Supp. Tr. 14) Rodriguez told Struble that he did object. (Supp. Tr. 14; 49) Struble admitted that Rodriguez was not free to leave at that time and would have used his dog no matter what. (Supp. Tr. 49) Struble then ordered Rodriguez to turn off the ignition and exit his truck and stand in front of the cruiser until a second officer arrived. (Supp. Tr. 14-15)

Struble then asked Rodriguez if he had an issue with a police service dog walking around the outside of his vehicle. (Id.) Rodriguez indicated that he did have an issue with it. (Supp. Tr. 14; 49) At 12:33 a.m., Deputy Decals of the Douglas County Sheriff's Office arrived at the scene. (Supp. Tr. 16; 48) Approximately one minute later, Struble walked his dog around the vehicle. (Supp. Tr. 17; 48) The dog alerted to the front passenger side door. (Id.) Struble estimated that as much as eight minutes passed from the time he issued the written warning to the time the dog alerted on the vehicle. (Supp. Tr. 18) A subsequent search of the vehicle revealed a large bag of methamphetamine. (Id.)

At the conclusion of the hearing on Rodriguez's motion to suppress, the Magistrate Judge concluded that the officers' actions complied with the Fourth Amendment. Specifically, the Magistrate found that probable cause for the traffic stop existed because Struble had an objectively reasonable basis for believing that Rodriguez had violated Nebraska law. (Supp. Tr. 77-78). The Magistrate made a

7

factual finding that the routine traffic stop concluded at 12:25 a.m. and that the dog indicated on the vehicle seven to eight minutes later. (Supp. Tr. 78). The Magistrate found that Struble did not have reasonable suspicion necessary to detain Rodriguez after the traffic stop concluded. (Supp. Tr. 81-82) Nevertheless, the Magistrate stated that the Eighth Circuit considered a detention of up to ten minutes beyond the conclusion of a traffic stop to be a *de minimis* intrusion on an individual's Fourth Amendment rights. Therefore, Rodriguez's detention of up to eight minutes was *de minimis*. (Supp. Tr. 81-82). The Magistrate voiced his opinion that he did not think ten minutes was *de minimis*, but noted he was required to follow Circuit precedent. Accordingly, the Magistrate recommended that Rodriguez's motion to suppress be denied. (Supp. Tr. 81-82)

The district court further held that the traffic stop was not unreasonably prolonged, and any intrusion on Rodriguez's liberty following the traffic stop was *de minimis*. (Add. at 4) As did the Magistrate, the Court cited United States v. Morgan, 270 F.3d 625 (8th. Cir. 2001) as the source of this ruling. Accordingly, the court denied Rodriguez's motion to suppress. (Add. at 5)

## SUMMARY OF THE ARGUMENT

The traffic stop was complete when Struble handed Rodriguez his warning ticket. At that point, Struble needed either reasonable suspicion or consent to detain

8

Rodriguez until the second officer arrived to conduct the canine sniff. Struble did not have the requisite reasonable suspicion to detain Rodriguez after the warning ticket was issued, and Rodriguez did not consent to prolonging the encounter. The prolonged detention was not a *de minimis* extension of the stop and resulted in an unlawful intrusion on Rodriguez's Fourth Amendment rights.

<u>**STANDARD OF REVIEW**</u>

In reviewing a denial of a motion to suppress, this Court reviews the district court's factual findings for clear error and questions of law de novo. <u>United States v. Mallard</u>, 334 F.3d 765, 766 (8th Cir. 2003).

<u>**ARGUMENT**</u>

I. **MORGAN STRUBLE VIOLATED RODRIGUEZ'S FOURTH AMENDMENT RIGHTS WHEN, AFTER THE CONCLUSION OF A TRAFFIC STOP AND WITHOUT REASONABLE SUSPICION OF CRIMINAL ACTIVITY, HE DETAINED RODRIGUEZ FOR EIGHT MINUTES TO WAIT FOR A BACK-UP OFFICER AND DEPLOY A DRUG DOG TO SNIFF RODRIGUEZ'S VEHICLE.**

It is undisputed that Officer Struble detained Rodriguez for eight minutes following the termination of the traffic stop. Under this Court's caselaw, such a detention is justified only if the officer develops reasonable suspicion of criminal activity during the course of the stop or if the driver consents. <u>United States v. Flores</u>, 464 F.3d 1100, 1103 (8th Cir. 2007). Nothing occurred during the stop to

9

provide reasonable suspicion of criminal activity, and Rodriguez did not consent to further detention. Nonetheless, the court declined to suppress the evidence, erroneously concluding that the extension was only a permissible "de minimis" intrusion on Rodriguez's Fourth Amendment rights.

This Circuit's acceptance of a "de minimis" detention following a legitimate traffic stop stretches back to United States v. $404, 905, supra, 182 F.3d at 643. There, this Court confronted what it considered to be "a novel issue concerning the Fourth Amendment interplay between traffic stops and canine sniffs." Id. at 645. Specifically, this decision addressed whether officers violated a motorist's Fourth Amendment rights when, after completing its investigation of a routine traffic violation, the investigating officer took less than two minutes to conduct a canine sniff around the exterior of the motorist's vehicle. Id. at 646. The traffic stop was unquestionably complete by the time the dog sniff occurred, and the sniff was done "without reasonable suspicion to believe there were drugs in this particular vehicle." Id. at 649. Nonetheless, the Court held that the officers' actions had not violated the motorist's constitutional rights, stating:

> [W]hen a police officer makes a traffic stop and has at his immediate disposal the canine resources to employ this uniquely limited investigative procedure, it does not violate the Fourth Amendment to require that the offending motorist's detention be momentarily extended for a canine sniff of the vehicle's exterior.

10

Id. at 648.

This Court gave three reasons for its decision. First, while the length of detention is an important factor in the analysis of Terry investigative stops, where officers must "diligently pursue" a given means of investigation, that limitation does not similarly apply to traffic stops. Id. at 648. "Given the myriad situations in which traffic stops occur," the Court explained, "it is not reasonable to subject them to the length-of-detention analysis we use in evaluating investigatory stops." Id. Second, the decision asserted, "the line [making completion of a traffic stop] is quite artificial." Id. "When the constitutional standard is reasonableness measured by the totality of the circumstances, we should not be governed by artificial distinctions." Id. Finally, "[the officer's] conduct on the whole was not constitutionally unreasonable." The Court held that a two minute extension of a traffic stop is a "de minimis" intrusion on a person's liberty. Id.

Since this decision, this Court has been careful to confine its "de minimis" exception to cases where the length of post-stop delay was nearly the same as that approved in $404,905. As the chart below demonstrates, the Court's definition of "de minimis" extension typically means a 2 to 3 minute delay when a drug dog is immediately available or the officer can easily obtain consent:

Appellate Case: 13-1176    Page: 17    Date Filed: 05/21/2013 Entry ID: 4037780

| Name of Case | Amount of Delay | Cited Authority |
|---|---|---|
| United States v. $404,905 in U.S. Currency, 182 F.3d 643 (8th Cir. 1999) | > 2 minutes | Case of first impression |
| United States v. Morgan, 270 F.3d 625 (8th Cir. 2002) | "well under 10 minutes" | $404,905 in U.S. Currency |
| United States v. Martin, 411 F.3d 998 (8th Cir. 2005) | 2 minutes | $404,905 in U.S. Currency |
| United States v. Alexander, 448 F.3d 1014 (8th Cir. 2006) | 4 minutes | $404,905 in U.S. Currency; Martin |
| United States v. Robinson, 455 F.3d 832 (8th Cir. 2006) | "only a few minutes" | $404,905 in U.S. Currency; Morgan; Martin; Alexander |
| United States v. Suitt, 569 F.3d 867 (8th Cir. 2009) | > 3 minutes | $404,905 in U.S. Currency; Martin; Alexander |
| United States v. Rivera, 570 F.3d 1009 (8th Cir. 2009) | > 2 minutes | $404,905 in U.S. Currency; Alexander |
| United States v. Munoz, 590 F.3d 916 (8th Cir. 2010) | 2-1/2 minutes | Suitt; Robinson; Alexander |
| United States v. Mohamed, 600 F.3d 1000 (8th Cir. 2010) | 5 minutes | $404,905 in U.S. Currency; Alexander; Martin |
| United States v. Adams, (unpublished) 485 Fed. Appx. 845 (8th Cir. 2012) | "only a few seconds" | Mohamed; Martin; Alexander; Robinson |

Admittedly, there are a few cases which creep beyond 2-3 minutes.  Morgan, 270 F.3d at 625; Mohamed, 600 F.3d at 1000.  However, the facts of each of these

Appellate Case: 13-1176     Page: 18     Date Filed: 05/21/2013 Entry ID: 4037780

cases are distinguishable from Rodriguez's case. Moreover, a close examination of these cases reveals that the Court's "de minimis" discussion was merely dicta and therefore not binding on this Court. Thus, neither of these opinions support the court's decision here.

Morgan involved a traffic stop in Nebraska for speeding. Nebraska State Patrol Trooper Goltz stopped a van for speeding and improper registration of the vehicle. There were three occupants. Goltz smelled cigar smoke as well as some kind of deodorizer or perfume as he approached the vehicle. He noticed one of the occupants to be very nervous and made no eye contact with him. He spoke with another passenger who was also nervous and explained a very suspicious story about a visit to Arizona but was not able to provide a name of any other city other than Phoenix. Goltz concluded the traffic stop by returning documents he had taken from the three passengers. Before they could leave, he approached Morgan and talked to her about law enforcement's role in the war on drugs. She denied that any drugs were in their vehicle but was very nervous as she did so. Goltz asked for permission to search and Morgan responded what would happen if she refused. He answered that he would use the dog anyway. Morgan relented and the dog was walked around the vehicle. It alerted on the vehicle revealing a large quantity of marijuana.

13

On appeal, Morgan argued that the officer detained her beyond the end of the stop without reasonable suspicion or consent. The Court's decisions on these issues are the only statements of precedential value in the opinion. The Court agreed that Morgan did not voluntarily consent to the stop. However, it concluded that there was reasonable suspicion to delay Morgan for a dog sniff. Id. at 631. At the end of an eight-page decision, the Court added a single paragraph of *dicta*:

> Even if the facts had not been sufficient for reasonable suspicion, however, a **short** detention for a drug sniff would not violate the Fourth Amendment. . . . Here, the dog was at the scene from the beginning and it only took a **short** time to walk the dog over to the van where it alerted to the presence of drugs. The **exact number of minutes is uncertain, but Goltz testified that "well under 10 minutes"** passed between the end of the conversation with Morgan and the dog alerting to the marijuana. We do not believe that the **few minutes** difference between the time in this case and $404,905 in U.S. Currency has constitutional significance. The delay caused by conducting the dog sniff did not violate the Fourth Amendment.

Id. at 631-32.

In denying Rodriguez's motion to suppress, the magistrate judge cited Morgan for the proposition that the Eighth Circuit considers post-stop delays of up to ten minutes "de minimis." The district court concurred. As explained above, however, Morgan flatly does not stand for such a proposition. The time in Morgan was both undefined and unimportant to the decision. Morgan is simply one in the progeny of

14

cases following $404,905 in U.S. Currency, none of which validate the time of delay in this case.

The only other decision with a delay of more than 2-3 minutes is Mohamed, 600 F.3d 1000 (8th Cir. 2010). Unlike the facts in Morgan, the Mohamed decision has specific factual findings as to the relevant periods of time. There is a factual finding that the time between the initial stop and the return of Mohamed's documents was seven minutes. There is also a finding that the trooper completed the canine search **within** five minutes of concluding the lawful stop and the finding of probable cause by the dog sniff. The decision cites $404,905 in U.S. Currency for the principle that "when a dog sniff occurs after a very short lapse of time from when the purpose of the traffic stop has been completed, there is a *de minimis* intrusion, and therefore, under the **general rule of reasonableness** the stop does not violate the Fourth Amendment." Id. at 1005 (emphasis supplied). The Court noted that "although reasonable suspicion is not required for a canine search to be considered a *de minimis* intrusion . . . it is **worth noting** that such reasonable suspicion existed in this case." Id. (emphasis supplied). "Thus, the canine sniff did not unreasonably prolong the stop, and was based on a reasonable suspicion anyway to believe that there might be drugs in Mohamed's car. It is certainly a fair conclusion that reasonable suspicion

15

creates the rule of reasonableness which is necessary to determine whether there is a *de minimis* intrusion." Id.

From these statements by the Eighth Court it is clear to see the distinctions between Rodriguez's case and Mohamed. First, the delay in this case was nearly double what it was in Mohamed. Second, in contrast to Mohamed, there was no reasonable suspicion to justify a detention here. If, as the Court in Mohamed states, "reasonable suspicion creates the rule of reasonableness which is necessary to determine whether there is a de minimis intrusion," a crucial component to finding a "de minimis" intrusion is missing here. Therefore, Mohamed cannot justify the delay in this case.

In summary, the detention in this case was nearly twice as long as any detention that has previously been considered "de minimis" by the Eighth Circuit. The eight-minute delay violated Rodriguez's Fourth Amendment rights, and requires that all evidence discovered during the search of his vehicle be suppressed. Wong Sun v. United States, 83 S. Ct. 407 (1963).

## II. THERE WAS INSUFFICIENT FACTS TO ESTABLISH REASONABLE SUSPICION THAT THE DEFENDANT WAS INVOLVED IN CRIMINAL ACTIVITY.

16

The Fourth Amendment provides protection to individuals subject to detention following the end of a valid traffic stop. The Fourth Amendment is not violated if the officer has reasonable suspicion to detain the individuals in the vehicle until a drug dog sniff can be deployed. United States v. Carrate, 122 F.3d 666, 668 (8ᵗʰ Cir. 1997). "Whether an officer has a reasonable suspicion to expand the scope of a stop is determined by looking at 'the totality of the circumstances, in light of the officer's experience.'" Id. Both the magistrate judge and the district court concluded that the totality of the circumstances here did not give rise to reasonable suspicion. This Court should uphold that decision.

Trooper Struble said the first indicator of drug activity was the overwhelming smell of air freshener/perfume as he approached Rodriguez's vehicle. The strong smell of an air freshener can act as a cover-up of the smell of illegal narcotics. However, air fresheners have legitimate purposes as well, as they are manufactured and marketed to eliminate or cover up the smells of everyday life that can built up inside a vehicle. Officer Struble testified that "it was a pleasant smell," which is not often the case when used in quantities necessary to mask drug odors. Because reasonable suspicion may not properly be based upon circumstances which "describe a very large category of predominantly innocent activity, Reid v. Georgia, 448 U.S. 438, 441 (1980), this factor does little to provide reasonable suspicion.

17

The second observation which raised Struble's suspicion was Pollman's nervousness. Struble concluded Pollman was nervous based on the fact that Pollman had his baseball cap pulled down to just above the eyes, he was smoking a cigarette, and he avoided eye contact with Struble. The courts indicate that nervousness must be treated with caution because all motorists can exhibit varying degrees of nervousness during contact with law enforcement officers at a traffic stop. United States v. Jones, 269 F.3d 919, 929 (8th Cir. 2001). Caution is especially warranted here, as Pollman's nervousness would be a normal reaction to the stop itself as opposed to any contraband in the vehicle. Struble's initial approach to the Rodriguez vehicle was on the passenger side front seat window where Pollman was sitting. From that position, Struble was talking across Pollman to Rodriguez. Struble described Rodriguez as agitated as he was being told that the ticket was for driving on the shoulder of the road even though the tires momentarily crossed the fog line. This is certainly an understandable reaction. Under the circumstances, any nervousness Pollman exhibited could be attributable to the uncomfortable position in which he found himself. This conclusion is supported by the absence of any similar nervousness when Struble came back and questioned Pollman in detail as to the purpose of their trip.

18

The next event raising his suspicion was Rodriguez's decision to not accompany him to the police cruiser. The suspicion was that Struble had anyone that "did not want to sit in my vehicle with me". Rodriguez asserted his constitutional rights. A citizen is not obligated to answer the questions from police officers or to any officer in the cruiser during the traffic stop. Terry, 392 U.S. 1, 14 (1968). Any assertion of an individual's constitutional rights cannot be used in any determination as to whether there is reasonable suspicion as to drug activity.

Officer Struble said he was also suspicious of Pollman's description of the reason for their travel. Pollman told Struble that he and Rodriguez lived in Norfolk and had driven to Omaha to look at an older Mustang that was for sale. He did not have a picture of the vehicle before he drove to Omaha. They did not have cash with them and did not purchase the car because the owner did not have the title. Office Struble found this activity to be suspicious because it was "unnormal to me, it's not something I would do." Struble was bothered by "[t]he fact that it was midnight – after midnight on a Tuesday as they drove over two hours to look at a vehicle in the dark." Significantly, Struble did not ask Pollman when they left Norfolk, when they saw the car and what they did afterwards. Nevertheless, he speculated it was a two-hour trip with a rapid turnaround in the middle of the night.

19

Assuming Struble's speculation was correct, this fact is not indicative of criminal activity. A vehicle is a large investment, and something worth looking at in person before handing over a significant amount of money. Moreover, Struble's suspicion was not the result of his law enforcement experience. When asked if his suspicion of these circumstances came from his law enforcement background, Struble said, "No, common knowledge." Struble's answer on this point demonstrates that his suspicion of the circumstances was simply a hunch. Since hunches cannot support a finding of reasonable suspicion, Terry, 392 U.S. at 22, the Court should give it no weight here.

Undoubtedly the government will try to bolster each of these innocent factors with Struble's status as a trained police officer. Indeed, the totality of the circumstances in the reasonable suspicion inquiry must be determined "in light of the officer's experience." Carrate, 122 F.3d at 668. The officer's experience was one of the main justifications for the reasonable suspicion finding in Morgan, discussed in Section I of this brief. The Court in Morgan placed much emphasis on Trooper Goltz's 11 years as a state trooper and seven years as a drug dog handler, and the fact that he taught classes to other law enforcement officers. Officer Struble, however, is not an experienced officer. He has been a law enforcement officer for just shy of two years in the tiny town of Valley, Nebraska. Struble is on the opposite end of the

20

spectrum from the officer in <u>Morgan</u>.  If anything, his experience counts against him in the reasonable suspicion analysis.

In summary, none of the factors cited by Officer Struble–either in isolation or in combination–give rise to reasonable suspicion that Rodriguez or Pollman were engaged in criminal activity.  The officer therefore lacked any justification to detain Rodriguez after issuing his citation and returning his documents.  The eight-minute detention following the conclusion of the stop violated Rodriguez's constitutional rights, and requires suppression of the evidence against him.

## <u>CONCLUSION</u>

For the reasons discussed, Dennys Rodriguez requests that his conviction be reversed.

DENNYS RODRIGUEZ, Appellant,

By:___s/ Shannon P. O'Connor_____
    **SHANNON P. O'CONNOR**
    **First Assistant Federal Public Defender**
    222 South 15th Street, Suite #300N
    Omaha, NE 68102
    (402) 221-7896
    fax: (402) 221-7884
    e-mail: shannon_o'connor@fd.org

Appellate Case: 13-1176    Page: 27    Date Filed: 05/21/2013 Entry ID: 4037780

**IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT**

UNITED STATES OF AMERICA,
Appellee,

vs.

DENNYS RODRIGUEZ,
Appellant.

**Certificate of Service**

Shannon P. O'Connor, after being first duly sworn states:

1.      He is one of the attorneys for Appellant herein.

2.      I hereby certify that on May 20, 2013, I electronically resubmitted for approval the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished pursuant to Rule 28A(d) of the Local Rules of the United States Court of Appeals for the Eighth Circuit.

22

DENNYS RODRIGUEZ, Appellant,


By: ___ s/ Shannon P. O'Connor _____
**SHANNON P. O'CONNOR**
**First Assistant Federal Public Defender**
222 South 15th Street, Suite 300N
Omaha, NE 68102
(402) 221-7896
Fax: (402) 221-7884
e-mail: shannon_o'connor@fd.org

23

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

UNITED STATES OF AMERICA,
Appellee,

vs.

DENNYS RODRIGUEZ,
Appellant.

## Certificate of Compliance

Shannon P. O'Connor, after being first duly sworn, states:

1. The electronic version of this brief is virus-free and the addendum has been scanned for viruses and is virus-free.

2. Appellant's Brief in this matter is 21 pages in length, excluding the Certificate of Service and Certificate of Compliance, which complies with the page limit option found at Fed. R. App. P. 32(a)(7)(A).

3. Appellant's Brief in this matter was prepared using WordPerfect X4, with a 14-pt, proportionally-spaced Times New Roman font face, in compliance with Fed. R. App. P. 32 (a)(5).

24

DENNYS RODRIGUEZ, Appellant,


By:    s/ Shannon P. O'Connor

**SHANNON P. O'CONNOR**
**First Assistant Federal Public Defender**
222 South 15th Street, Suite 300N
Omaha, NE 68102
(402) 221-7896
Fax: (402) 221-7884
e-mail: shannon_o'connor@fd.org