IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT


CASE NO. 13-1176


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

vs.

DENNYS RODRIGUEZ,

Defendant-Appellant.


**BRIEF OF APPELLEE**


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

The Honorable Joseph F. Bataillon, United States District Court

UNITED STATES OF AMERICA,
Plaintiff-Appellee

DEBORAH R. GILG
United States Attorney
for the District of Nebraska

    and

MARTIN J. CONBOY IV
Special Assistant U.S. Attorney  (#22257)
1620 Dodge Street, Suite 1400
Omaha, Nebraska 68102-1506
Phone:  (402) 661-3700

## SUMMARY OF THE CASE

Dennys Rodriguez (hereinafter "Rodriguez"), Appellant, was indicted in the District of Nebraska for possessing with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine. Rodriguez filed a Motion to Suppress, which was heard before the Magistrate Judge. The Magistrate Judge recommended to the District Court that the Motion to Suppress be denied in all respects. Rodriguez objected to the Findings and Recommendations of the Magistrate Judge.

The District Court overruled Rodriguez's objection and denied the Motion to Suppress. Pursuant to a plea agreement, Rodriguez entered a conditional plea of guilty to the Indictment. The conditional plea preserved Rodriguez's right to appeal the District Court's order denying the Motion to Suppress. Rodriguez now appeals the denial of his Motion to Suppress

The United States suggests that the briefs submitted by the Appellant and the Appellee sufficiently apprise the Court of the issues presented by this appeal. The United States further suggests that oral argument is not necessary to decide this matter. However, should the Court deem it appropriate to hear oral argument, the United States would respectfully submit that ten (10) minutes would be sufficient.

i

# TABLE OF CONTENTS

Page

SUMMARY OF THE CASE.......................................................................i

TABLE OF CONTENTS.......................................................................... ii

TABLE OF AUTHORITIES ..................................................................... iii

JURISDICTIONAL STATEMENT ..........................................................iv

STATEMENT OF THE ISSUES..............................................................v

STATEMENT OF THE CASE...................................................................1

STATEMENT OF FACTS ........................................................................2

SUMMARY OF ARGUMENT ..................................................................8

ARGUMENT

    **I.   THE DURATION OF THE DETENTION FOLLOWING THE TRAFFIC STOP WAS *DE MINIMIS* AND DID NOT VIOLATE THE FOURTH AMENDMENT.**........................................................................8

    **II.  THE DURATION OF THE DETENTION WAS NOT UNREASONABLE AS REASONABLE SUSPICION EXISTED.**......................................................................15

CONCLUSION ........................................................................................20

CERTIFICATION OF WORDPROCESSING ........................................21

CERTIFICATE OF SERVICE ................................................................21

Appellate Case: 13-1176   Page: 3   Date Filed: 06/07/2013 Entry ID: 4043447

Cases

United States v. Linkous, 285 F.3d 716 (2002).........................................................14

United States v. $404,905 in U.S. Currency,
182 F.3d 643 (8th Cir. 1999) ................................................................ 9, 11, 14, 16

United States v. Alexander, 448 F.3d 1014 (8th Cir. 2006) ......................................9

United States v. Beck, 140 F.3d 1129 (8th Cir. 1998)..............................................16

United States v. Bloomfield, 40 F.3d 910 (8th Cir. 1994)........................................17

United States v. Farnell, 701 F.3d 256 (8th Cir. 2012) .............................................8

United States v. Mabery, 686 F.3d 591 (8th Cir. 2012) ...........................................15

United States v. Mohamed, 600 F.3d 1000 (8th Cir. 2010) ....................... 10, 14, 15

United States v. Morgan, 270 F.3d 625 (8th Cir. 2001) .................................. 10, 13

United States v. Newell, 596 F.3d 876 (8th Cir. 2010) ...........................................16

United States v. Olivera-Mendez, 484 F.3d 505 (8th Cir. 2007) ............................16

United States v. Quintero-Felix, ---F.3d ---, 2013 WL 1810606 (8th Cir. 2013)....16

United States v. Robinson, 455 F.3d 832 (8th Cir. 2006) .......................................14

Statutes

Title 21, United States Code, Sections 841(a)(1) ......................................................1

iii

## JURISDICTIONAL STATEMENT

The decision below was reached by the Honorable Joseph F. Bataillon, District Court Judge for the District of Nebraska, in case number 8:12-CR-00170. The jurisdiction of the District Court was based on 18 U.S.C. § 3231. The final judgment below was entered on January 7, 2013. (District Court Docket 83, hereinafter "DCD").

Rodriguez timely filed a Notice of Appeal on January 17, 2013. (DCD 87). This Court has jurisdiction pursuant to 28 U.S.C. § 1291 to hear this appeal.

Appellate Case: 13-1176    Page: 5    Date Filed: 06/07/2013 Entry ID: 4043447

## STATEMENT OF THE ISSUES

**I.    WHETHER THE DISTRICT COURT CORRECTLY DETERMINED THAT THE DURATION OF THE DETENTION FOLLOWING THE TRAFFIC STOP WAS *DE MINIMIS* WHICH DID NOT VIOLATE THE FOURTH AMENDMENT.**

United States v. $404,905 in U.S. Currency, 182 F.3d 643 (8th Cir. 1999)

United States v. Alexander, 448 F.3d 1014 (8th Cir. 2006)

United States v. Morgan, 270 F.3d 625 (8th Cir. 2001)


**II.    WHETHER REASONABLE SUSPICION EXISTED JUSTIFYING THE DURATION OF THE DETENTION FOLLOWING THE TRAFFIC STOP.**

United States v. Beck, 140 F.3d 1129 (8th Cir. 1998).

United States v. Quintero-Felix, ---F.3d ---, 2013 WL 1810606 (8th Cir. 2013)

Appellate Case: 13-1176    Page: 6    Date Filed: 06/07/2013 Entry ID: 4043447

## STATEMENT OF THE CASE

On May 22, 2012, the Grand Jury sitting in the District of Nebraska returned an Indictment charging the Appellant, Dennys Rodriguez, with knowingly and intentionally possessing with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1). (DCD 1). Rodriguez was arraigned before United States Magistrate Judge F.A. Gossett III on May 30, 2012, and entered a plea of not guilty. (DCD 18).

On June 19, 2012, Rodriguez filed a Motion to Suppress. (DCD 23). United States Magistrate Judge F.A. Gossett heard the Motion to Suppress on July 10, 2012. (DCD 34). Following the hearing, the Magistrate Judge issued his Findings and Recommendation suggesting that the Motion to Suppress be denied in all respects. Id. Rodriguez objected to the Findings and Recommendations. (DCD 40). On August 30, 2012, the District Court overruled Rodriguez's objections and denied the motion. (DCD 43).

On September 28, 2012, Rodriguez appeared before the District Court and entered a conditional plea of guilty to the Indictment. (DCD 56). The guilty plea was entered pursuant to a plea agreement. Id. The plea preserved Rodriguez's right to appeal the District Court's denial of the Motion to Suppress. (DCD 59).

1

On January 4, 2013, Rodriguez was sentenced by the District Court to a sixty (60) month term of imprisonment, followed by four (4) years of supervised release. (DCD 83). The Judgment in this matter was entered on January 7, 2013. Id. Rodriguez appeals the District Court's Memorandum and Order denying the Motion to Suppress.

## STATEMENT OF FACTS

On March 27, 2012, K-9 Officer Morgan Struble (hereinafter "Struble") with the Valley Police Department was on patrol westbound on Highway 275. (DCD 37, Transcript for Motion to Suppress, p. 4, hereinafter "TR."). Near the intersection of Highway 275 and 276th Street, Struble observed a Mercury Mountaineer drive onto the shoulder of the roadway. (TR. at p. 4). The Mountaineer was traveling westbound in the outside lane. (TR. at p. 5). The Mountaineer veered slowly onto the shoulder, as if the driver was not paying attention, then "jerked" back onto the roadway. (TR. at p. 5). The Mountaineer's passenger side tires crossed over the marked line for several seconds. (TR. p. at 5-6).

A traffic stop was conducted and the driver was identified as Rodriguez and the passenger as Scott Pollman (hereinafter "Pollman"). (TR. at p. 6). The traffic stop occurred at approximately 12:06 a.m. (TR. at p. 12). During the initial

2

encounter, Struble noticed an "overwhelming" odor of air freshener emanating

from the Mountaineer. (TR. at p. 6). Struble testified that in his experience, the

overwhelming odor of air freshener was an indicator of illicit activity. (TR. at p. 7).

Pollman appeared exceedingly nervous and had his hat pulled down over his eyes,

looking straight ahead, and would not make eye contact. (TR. at p. 7, 19).

Pollman's nervousness was noteworthy because he was merely a passenger in the

vehicle. (TR. at p. 19).

During the traffic stop, Rodriguez was asked to sit in the patrol vehicle while

a record check was conducted. (TR. at p. 8). Rodriguez refused. (TR. at p. 9).

Rodriguez stated that he would rather sit in his own vehicle. Id. This was the first

time, in Struble's experience, that someone was "so adamant" against sitting in the

patrol vehicle. (TR. at p. 9). This was significant to Struble as it appeared that

Rodriguez did not want to be far from the Mountaineer or its contents. (TR. at p.

35).

After running a records check, Struble returned to the Mountaineer and

spoke with Pollman. (TR. at p. 9). Pollman stated that he and Rodriguez were

coming back from Omaha, Nebraska, to Norfolk, Nebraska. (TR. at p. 10). The

purpose of the trip was to look into purchasing a vehicle in Omaha, Nebraska. Id.

Pollman admitted that he had not seen any photographs of the vehicle prior to

Appellate Case: 13-1176    Page: 9    Date Filed: 06/07/2013 Entry ID: 4043447

making the trip. (TR. at p. 11). Struble found it significant that the two would be driving from Norfolk to Omaha on a Tuesday night, returning after midnight, to go look at a vehicle that neither had seen a picture of. Id. Pollman stated that he did not buy the vehicle because the seller did not have a title to the vehicle. (TR. at p. 41). Struble found it significant that the two would make the trip without knowing this in advance. (TR. at p. 45). It did not appear to Struble that Rodriguez and Pollman had thought of a good cover story in the event that they were pulled over. (TR. at p. 46).

At 12:19 a.m., a backup officer was requested. (TR. at p. 12). Struble was concerned about his safety. (TR. at p. 51). There were two occupants of the Mountaineer. (TR. at p. 51). It was after midnight on a rural state highway. (TR. at p. 4). Valley, Nebraska, is a small town with only four full time officers and five part-time officers. (TR. at p. 19). The stretch of highway that ran through Valley, Nebraska, was only a couple of miles. (TR. at p. 22). Struble was alone.

At 12:25 a.m., the data checks were completed and Struble wrote a warning ticket. (TR. at p. 13). Struble returned to the Mountaineer and gave the ticket to Rodriguez. (TR. at p. 12). It took approximately 2-3 minutes for Struble to issue and explain the warning ticket to Rodriguez. (TR. at p. 13-14). Struble indicated that it would have been approximately 12:27 or 12:28 a.m. when the warning ticket

4

was issued. Id.

Following the issuance of the warning ticket, Rodriguez was asked if Struble's K-9 could walk around the Mountaineer. (TR. at p. 14). The K-9, Floyd, was in Struble's patrol vehicle during the traffic stop. (TR. at p. 16). Rodriguez did not consent to the K-9 walking around the Mountaineer. (TR. at p. 14). Rodriguez was asked to exit the Mountaineer. (TR. at p. 14). Rodriguez stated that he was going to roll the windows up, and after doing so he exited the vehicle. (TR. at p. 14).

Struble waited for the backup officer to arrive before walking Floyd around the Mountaineer. (TR. at p. 58). Deputy Duchelus with the Douglas County Sheriff's Office arrived at 12:33 a.m. (TR. at p. 16). It took 45 seconds to one minute for Struble to remove Pollman from the Mountaineer and retrieve Floyd from the patrol vehicle. (TR. at p. 17). Floyd was then led around the Mountaineer. Id. Approximately 20 to 30 seconds later Floyd alerted and indicated to the presence of narcotics inside the Mountaineer[1]. (TR. at p. 17-18). No more than seven or eight minutes had passed between the issuance of the warning ticket and Floyd's indication. (TR. at p. 18, 78).

---

[1] Rodriguez stipulated to Floyd's qualifications and did not challenge the K-9's search. (TR. at p. 15).

5

After Floyd indicated to the presence of narcotics inside the Mountaineer, the Mountaineer was searched. Id. During the search, a large bag of methamphetamine was found. Id.

On May 22, 2012, the Grand Jury sitting in the District of Nebraska returned an Indictment charging Rodriguez with knowingly and intentionally possessing with intent to distribute 50 grams or more of a mixture or substance containing methamphetamine. (DCD 1). Rodriguez was arraigned before United States Magistrate Judge F.A. Gossett III on May 30, 2012, and entered a plea of not guilty. (DCD 18).

On June 19, 2012, Rodriguez filed a Motion to Suppress. (DCD 23). United States Magistrate Judge F.A. Gossett heard the Motion to Suppress on July 10, 2012. (DCD 34). Following the hearing, the Magistrate Judge issued his Findings and Recommendation suggesting that the Motion to Suppress be denied in all respects. Id. Rodriguez objected to the Findings and Recommendations. (DCD 40).

On August 30, 2012, the District Court overruled Rodriguez's objections and denied the motion. (Appellate Add. at 11). The District Court found that the detention following the traffic stop was *de minimis*. (Appellate Add. at 10). "Officer Struble requested backup for officer safety. The backup officer responded

6

in a short period of time.  Officer Struble had his K-9 in his car and conducted the search immediately thereafter." Id.  The District Court concluded that the total time of the detention following the traffic stop was no more than seven to ten minutes. Id.  The District Court found that this time was *de minimis* and that no constitutional violation had occurred. Id.

Appellate Case: 13-1176     Page: 13     Date Filed: 06/07/2013 Entry ID: 4043447

# SUMMARY OF ARGUMENT

The District Court did not err in its conclusion that the duration of the traffic stop was *de minimis*. Struble's K-9 was present at the scene and was readily deployable. Struble exercised caution by waiting a few minutes in order for a backup officer to arrive. This was a reasonable precaution by Struble as he was alone on a rural highway after midnight with the two occupants of the Mountaineer. From the time the traffic stop was completed to the time that the K-9 indicated to the presence of narcotics was no more than seven or eight minutes.

# ARGUMENT

## I. THE DURATION OF THE DETENTION FOLLOWING THE TRAFFIC STOP WAS *DE MINIMIS* AND DID NOT VIOLATE THE FOURTH AMENDMENT.

### A. STANDARD OF REVIEW.

A district court's denial of a motion to suppress is reviewed under a two-pronged framework: factual findings are reviewed for clear error, and legal conclusions are reviewed *de novo*. United States v. Farnell, 701 F.3d 256, 260 (8th Cir. 2012).

### B. ARGUMENT.

The District Court did not err when it concluded that the duration of the traffic stop was *de minimis*. Struble's K-9 was readily deployable. The time from

8

the end of the traffic stop to the indication by the K-9 was no more than seven or eight minutes. Struble could have deployed his K-9 immediately, but for safety concerns chose to wait a few extra minutes until backup arrived. This decision was reasonable under the circumstances and did not unnecessarily delay Rodriguez.

"When a police officer makes a traffic stop and has at his immediate disposal the canine resources to employ this uniquely limited investigation procedure, it does not violate the Fourth Amendment to require that the offending motorist's detention be momentarily extended for a canine sniff of the vehicle's exterior." United States v. $404,905 in U.S. Currency, 182 F.3d 643, 649 (8th Cir. 1999). "Dog sniffs that occur within a short time following the completion of a traffic stop are not constitutionally prohibited if they constitute only *de minimis* intrusions." United States v. Alexander, 448 F.3d 1014, 1016 (8th Cir. 2006).

The dividing line separating a constitutionally prohibited detention and a *de minimis* detention is artificial, and the "constitutional standard is reasonableness measured by the totality of the circumstances." $404,905 in U.S. Currency, 182 F.3d at 649. This Court has found that in cases where the K-9 is already present and the time of the search lasted mere minutes, the seizure was *de minimis*. See $404,905 in U.S. Currency, 182 F.3d at 649 (two minute delay to conduct canine sniff was *de minimis*); Alexander, 448 F.3d at 1016 (four minute delay to conduct

9

canine sniff was *de minimis*); <u>United States v. Mohamed</u>, 600 F.3d 1000, 1005 (8th

Cir. 2010)(five minute delay to conduct canine sniff was *de minimis*).

In <u>United States v. Morgan</u>, 270 F.3d 625 (8th Cir. 2001), a traffic stop was

conducted on a van in which Morgan was a passenger. <u>Id.</u> at 627-628. The officer

conducting the traffic stop was accompanied by his drug detection K-9. <u>Id.</u> at 628.

Following the completion of the traffic stop, the officer ran his K-9 around the

exterior of the van, which alerted to the presence of narcotics. <u>Id.</u> The total time

between the completion of the traffic stop and the K-9's alert to the narcotics was

unclear, but it was "something less than 10 minutes". <u>Id.</u>

The Court in <u>Morgan</u> addressed whether the length of the time it took to

conduct the K-9 search following the traffic stop violated the Fourth Amendment.

In doing so, this Court considered two possible exceptions. "The first question is

whether [the officer] had a reasonable, articulable suspicion of criminal activity

beyond the reason for which he stopped the van." <u>Id.</u> at 631. It was determined

that reasonable suspicion did exist. <u>Id.</u> However, the analysis did not end there.

Despite finding that reasonable suspicion existed, the Court continued its analysis

by next examining whether the delay was *de minimis*:

> Even if the facts had not been sufficient for reasonable suspicion, however, a
> short detention for a dog sniff would not violate the Fourth Amendment. *See*
> <u>$404,905 in U.S. Currency</u>, 182 F.3d at 647-49 (two minute delay for a dog

10

sniff a de minimis intrusion).  Here, the dog was at the scene from the
beginning, and it only took a short time to walk the dog over to the van
where it alerted to the presence of drugs.  The exact number of minutes is
uncertain, but [the officer] testified that 'well under ten minutes' passed
between the end of his conversation with Morgan and the dog alerting to the
marijuana.  We do not believe that the few minutes difference between the
time in this case and $404,905 has constitutional significance.  The delay
caused by conducting the dog sniff did not violate the Fourth Amendment.

Id at 631-632.

In the present case, the time between the conclusion of the traffic stop and

the discovery of probable cause was approximately seven or eight minutes.  The

delay was less than ten minutes.  When considering just the time alone, this clearly

falls within the constitutional standards of reasonableness.  However, the totality of

the circumstances must also be addressed in any measurement. See $404,905 in

U.S. Currency, 182 F.3d at 649.  The totality of the circumstances further

demonstrate that the detention was reasonable.

Officer Struble, a small town police officer, was working alone.  It was after

midnight on a rural highway.  When he approached the Mountaineer, he noticed an

overwhelming odor of air freshener.  There were two occupants of the

Mountaineer.  As a passenger, Pollman was exceedingly nervous with his hat

pulled down low over his eyes, and he would not make eye contact with Struble.

Pollman's story that they drove the distance between Norfolk, Nebraska, and

11

Omaha, Nebraska, a two hour drive, to purchase a vehicle that he had not at least seen a picture of seemed incredulous. Moreover, Rodriguez was returning after midnight. It also did not make any sense that he made the trip to buy the vehicle without first knowing that the vehicle was ready to sell. Struble found this all hard to believe, because with "technology these days, it's pretty easy" to obtain this information. (TR. at p. 45).

In addition, Rodriguez did not want to leave the Mountaineer when asked to accompany Struble to the police cruiser. Rodriguez also wanted to be sure he rolled the Mountaineer's windows up prior to any K-9 sniff occurring. Under the circumstances, it was reasonable and prudent for Struble to wait until another officer arrived prior to him removing both occupants from the Mountaineer to begin the K-9 sniff.

The nearest available officer was a county sheriff's deputy. When this backup officer arrived, Struble was able to remove Pollman from the Mountaineer and place him where the other officer could watch him. With both Rodriguez and Pollman out of the vehicle and being watched, Struble could then retrieve his K-9 and concentrate on walking the K-9 around the Mountaineer. Struble could have commenced the K-9 search immediately following the conclusion of the traffic stop, but the circumstances, including safety concerns, where such that it was

12

reasonable to wait a few minutes until the backup officer arrived. The overall delay of seven or eight minutes was reasonable when measured by the totality of the circumstances.

Rodriguez argues that Morgan is inapplicable as the "less than ten minutes" is nothing more than dicta. (Appellant's Br. at 14). This is incorrect. Whether the delay was *de minimis* was an issue raised in the appeal. Morgan, 270 F.3d at 629. At the outset of its analysis, the Court acknowledged that it was considering more than just reasonable suspicion as an exception ("the first question"). Id. at 631. In addition, the Court as a whole ("we") determined that "under ten minutes" did not amount to an unreasonable delay[2]. Id. Finally, the Court was clear in finding that the delay "did not violate the Fourth Amendment." Id.

Rodriguez also argues that the time was unknown and unimportant to the decision in Morgan. (Appellant's Br. at 14). This is not correct. The time defined by Morgan was "less than ten minutes". In fact, the Eighth Circuit has cited Morgan for the proposition that "less than ten minutes" was *de minimis*. In United States v. Linkous, under similar circumstances (involving a traffic stop, reasonable suspicion, and a K-9 search), the Court found that "a short detention for a dog sniff

_____

[2] There was a dissenting opinion, however, this issue was not addressed in the dissent.

13

after the completion of a traffic stop does not violate the Fourth Amendment." 285 F.3d 716, 721 (2002).  In making this conclusion, the Court cited $404,905 in U.S. Currency ("two minute delay for a dog sniff was a *de minimis* intrusion"), and Morgan ("same conclusion for a delay of less than ten minutes"). Id.  See also United States v. Robinson, 455 F.3d 832, 834 (8th Cir. 2006) (citing Morgan, "we have upheld seizures of less than ten minutes *de minimis* intrusions that do not amount to an unreasonable seizure").  Rodriguez's argument that "less than ten minutes" is dicta is without merit.

Rodriguez also relies on United States v. Mohamed, 600 F.3d 1000 (8th Cir. 2010), which is another *de mininis* case with a post-traffic stop detention time of approximately 5 minutes.  Rodriguez asserts that Mohamed introduces the proposition that "reasonable suspicion creates the rule of reasonableness which is necessary to determine whether there is a *de minimis* intrusion." (Appellant's Br. at 16).  According to Rodriguez, this requires a showing that in order for a *de minimis* intrusion to be reasonable, there must be reasonable suspicion. Id.  Pursuant to this proposition, Rodriguez argues that in the present case the detention could not be *de minimis* because reasonable suspicion was not established. Id.

Rodriguez's interpretation is incorrect.  First, as it relates to reasonableness, Mohamed reiterates that because the detention arose out of a traffic stop, "the

14

general rule of balancing for reasonableness should be applied." <u>Mohamed</u>, 600 F.3d at 1005. Citing cases such as <u>Alexander</u> and <u>$404,905.00 in US Currency</u>, the Court in <u>Mohamed</u> stated that "when a dog sniff occurs after a very short lapse of time from when the purpose of the traffic stop has been completed, there is a de minimis intrusion, and therefore, under the general rule of reasonableness, the stop does not violate the Fourth Amendment." <u>Id.</u> There is no requirement for reasonable suspicion mentioned in <u>Mohamed</u>. As such, Rodriguez's assertion, that reasonable suspicion is necessary for a *de minimis* detention, is without merit.

### III. THE DURATION OF THE DETENTION WAS NOT UNREASONABLE AS REASONABLE SUSPICION EXISTED.

#### A. STANDARD OF REVIEW.

The denial of a motion to suppress is reviewed *de novo* but the underlying factual determinations are reviewed for clear error, giving due weight to inferences drawn by law enforcement. <u>United States v. Mabery</u>, 686 F.3d 591, 595 (8th Cir. 2012).

#### B. ARGUMENT.

During the course of the traffic stop, Struble developed a reasonable, articulable suspicion of criminal activity. As a result, the brief detention following the traffic stop did violate the Fourth Amendment.

Appellate Case: 13-1176     Page: 21     Date Filed: 06/07/2013 Entry ID: 4043447

Following a traffic stop, an officer "may detain the offending motorist while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation." $404,905 in U.S. Currency, 182 F.3d at 647. "However, once an officer finishes these tasks, the purpose of the traffic stop is complete and further detention of the driver or vehicle would be unreasonable, unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify further detention or unless the continued encounter is consensual." United States v. Quintero-Felix, --- F.3d ---, 2013 WL 1810606 (8th Cir. 2013) (internal quotation and citation omitted). "Whether a particular detention is reasonable in length is a fact-intensive question." United States v. Olivera-Mendez, 484 F.3d 505, 510 (8th Cir. 2007). Individual factors consistent with innocent travel can, when taken together under the totality of the circumstances, give rise to reasonable suspicion. United States v. Beck, 140 F.3d 1129, 1137 (8th Cir. 1998). Investigatory detentions must be reasonably necessary and limited in scope and duration. United States v. Newell, 596 F.3d 876, 879 (8th Cir. 2010).

In the present case, Struble had made several significant observations that, in his training and experience, gave him reasonable, articulable suspicion that a crime was being committed. During the initial contact the vehicle had an overwhelming

16

odor of air fresheners.  Pollman was uncommonly nervous, which was more significant considering that Pollman was the passenger.  Pollman had his hat pulled down over his eyes and looked straight ahead, and it appeared that Pollman was trying to avoid eye contact.  While a driver might be nervous because of the possibility of receiving a ticket, there is no reason for a passenger to be nervous, let alone uncommonly nervous. See United States v. Bloomfield, 40 F.3d 910, 918-19 (8th Cir. 1994) ("although it is customary for people to be 'somewhat nervous' when stopped by police, extreme nervousness may contribute to an officer's reasonable suspicion).

It also seemed incredible that Rodriguez and Pollman would travel several hours late at night to buy a vehicle when neither had seen a picture of the vehicle or determined that the vehicle was in fact ready to be sold.  In addition, the behavior  of Rodriguez was not typical.  While it was not required for Rodriguez to sit in his patrol vehicle, it was also the first time that anyone refused.  In addition, after Struble informed Rodriguez that he was going to deploy his K-9, Rodriguez made sure that the windows were rolled up on the Mountaineer.  Thus it appeared Rodriguez was attempting to conceal odors detectable to a narcotics K-9.

17

Rodriguez argues that reasonable suspicion did not exist, and points to the Magistrate Judge's findings[3]. The Magistrate Judge found that reasonable suspicion did not exist. However, the Magistrate Judge only briefly discussed a few of the factors that were known to Struble. When recognizing that Pollman was nervous, the Magistrate Judge did not mention the extent of Pollman's nervousness. (Appellant's Add. at 13). The Magistrate Judge also did not attach any significance to the fact that Pollman was the passenger, in which there is no reasonable explanation why a passenger would be so nervous.

Additionally, the Magistrate Judge only briefly discussed the purpose of the trip:

> Then he comes back up and has an exchange with the passenger, and there's information given about [the] purchase of a vehicle in Omaha and several items about that and the information about the purchase in Omaha make[s] Officer Struble suspicious…

(Appellant's Br. at 14). The Magistrate Judge did not mention that Rodriguez and Pollman made the long trip purportedly to purchase a vehicle having never seen a picture of the vehicle nor having ever determined that the vehicle was in fact ready to be sold. These are significant factors which were not addressed.

---

[3] The District Court did not address this issue after finding that the detention following the traffic stop was *de minimis*.

18

Finally, the Magistrate Judge did not address Rodriguez's rolling up the Mountaineer's windows after being informed that Struble was going to deploy his K-9. Again, there is no reasonable explanation why Rodriguez wanted the windows rolled up, other than to attempt to diminish any odor associated with criminal activity that the K-9 might detect. Taking this into consideration along with the fact that there was an overwhelming odor of air fresheners is very significant.

All of the factors, under the totality of the circumstances, gave rise to reasonable suspicion. The detention was limited in scope and duration, and lasted only long enough in order for Struble to dispel or confirm his suspicions. The detention following the traffic stop was permissible and not prohibited by the Fourth Amendment.

Appellate Case: 13-1176    Page: 25    Date Filed: 06/07/2013 Entry ID: 4043447

## **CONCLUSION**

For the above reasons, the District Court's Memorandum and Order denying

Rodriguez's Motion to Suppress should be affirmed.


Respectfully submitted,

UNITED STATES OF AMERICA

DEBORAH R. GILG
United States Attorney
District of Nebraska


__s/Martin J. Conboy, IV_____
By:   MARTIN J. CONBOY, IV (#22257)
Special Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha NE 68102-1506
(402) 661-3700

Appellate Case: 13-1176   Page: 26   Date Filed: 06/07/2013 Entry ID: 4043447

## CERTIFICATION OF WORD PROCESSING AND VIRUS SCAN

The undersigned certifies that pursuant to Eighth Circuit Rule of Appellate Procedure 28A(h)(2), the brief has been scanned for viruses and that it is virus-free. The brief was created using MicroSoft Word 2010

Dated this __7th_____ day of June, 2013

__s/Martin J. Conboy, IV_____
By:    MARTIN J. CONBOY, IV (#22257)
Special Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on June _7__, 2013, I electronically filed the foregoing with the Clerk of the Eighth Circuit Court of Appeals using the CM/ECF system which sent notification of such filing to the following:

__s/Martin J. Conboy, IV_____
By:    MARTIN J. CONBOY, IV (#22257)
Special Assistant U.S. Attorney

21